IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 06-10089-CIV-MOORE/GARBER

ROBERT ABAD,

    Plaintiff,

vs.

CITY OF MARATHON, FLORIDA,
MIKE H. PUTO, named in his individual
and official capacities, and
HANS K. WAGNER, named in his
individual and official capacities,

    Defendants.
_____/

## ORDER GRANTING IN PART DEFENDANTS', CITY OF MARATHON AND MIKE H. PUTO'S, MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon the Defendants', City of Marathon and Mike H. Puto's, Motion for Summary Judgment (DE # 8).

UPON CONSIDERATION of the Motion, and the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

**I.**    **Background**

The instant action arises out of disciplinary action taken against the Plaintiff, Robert Abad ("Abad"), by his employer. Abad was employed as a fire fighter and paramedic for the City of Marathon, Florida, from November 2003 through May 2006. Pl. Resp. at 2. Hans K. Wagner ("Wagner") is the Marathon Fire Chief, and Mike H. Puto is the Marathon City Manager. Compl. at 2.

In November, 2005, Abad was elected Secretary-Treasurer of a "local labor association of fire fighters and rescue personnel employed by the City." Id. In December, 2005, Abad wrote an

opinion column which was published in the December 28, 2005 issue of the Marathon Free Press (the "Column"). Id.; see Hallstrom Aff. Attach. 2 (DE # 21-2). The Column suggested that the quality of services provided by the Marathon firefighters and paramedics was at risk due to an insufficient number of emergency workers and what Abad characterized as "below average annual wages." Hallstrom Aff. Attach. 2 (DE # 21-2). In the Column, Abad called on the public to write letters and "contact [their] Council members" to support the fire fighters/paramedics and to pay the additional $10 per Marathon resident it would take to raise the fire fighters/paramedics' wages. Id. Abad signed the Column, "Robert Abad - Lieutenant - City of Marathon - Fire Rescue - Local 4396 Secretary." Id.

On the day the Column was published, Abad was suspended without pay while he was investigated to determine if he had violated the policies and procedures of the Marathon Fire Department or the City of Marathon. Hallstrom Aff. Attach. 3 (DE # 21-3). On January 12, 2006, Wagner issued a memorandum, signed by Puto, reprimanding Abad for having "made statements to the media and [beginning] a media campaign on behalf of the fire department questioning the level of service that would be given to this community," as well as "address[ing] personnel matters," in violation of "SOP 100.08, Media Relations," and "undermin[ing] the public confidence and mission of this department." Hallstrom Aff. Attach. 4 (DE # 21-4). Marathon Fire Rescue Standard Operating Procedure 100.08 requires:

> 1) Statements to the media, news releases, and media campaigns must be approved by the Fire Chief or other authorized person prior to their release, except as provided below.
> 2) An Incident Commander is authorized to provide the media with general details concerning an incident, but limited by the Chief.
> 3) Personnel are authorized to provide the media with a list of incidents. This information shall be limited to the dates, times, and locations of incidents.
> 4) Information pertaining to the cause and origin of an incident shall be released only by the Fire Chief or designated representative.
> 5) Information relating to personnel matters, Department policy, Department litigation, or other sensitive matters shall be released only by the Fire Chief.

Def. Mot. in Supp. of Mot. for Summ. J. (hereinafter "Def. Mot.") at 8.

Abad was disciplined with "[t]hree shifts without pay." Hallstrom Aff. Attach. 4 (DE # 21-4). Abad subsequently filed this action, claiming the Defendants had violated his rights under the United States and Florida Constitutions. Compl. at 1. Plaintiff first claims that his rights under 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution were violated by the Defendants' actions in response to his association with the union. Compl. at 4-6. Plaintiff's second claim is that Defendants violated his constitutional rights and his rights under 42 U.S.C. § 1983 by acting against him in retribution for statements he made. Id. at 6-8. Thirdly, Plaintiff claims Defendants violated his rights under the Florida Constitution, Article I, section 4, by acting in retaliation for statements Plaintiff made. Id. at 8-9. Finally, Plaintiff claims Defendants violated his freedom of assembly as guaranteed by Article I, section 5 of the Florida Constitution. Id. at 9-11. In their Motion for Summary Judgement (DE # 8), Defendants Puto and City of Marathon request summary judgement as to Plaintiff's latter three claims, but do not address Plaintiff's first claim, alleging violation of his constitutional right to freedom of association. Def. Mot. at 4.

## II.  Standard of Review

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of

meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. However, the nonmoving party:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. Anderson, 477 U.S. at 254. Summary judgment may be granted if the nonmovant fails to adduce evidence which, when viewed in a light most favorable to him, would support a jury finding in his favor. Id. at 254-55.

Additionally, the nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. Id.

### III. Discussion

#### A) Count II - Abad's Column Qualifies as Protected Speech

A public employee's First Amendment right of freedom of speech is not absolute. Rankin v. McPherson, 483 U.S. 378 (1987). This Court must use the four-step analysis from Pickering v. Board of Education, 391 U.S. 563 (1968), to balance the interests of the parties. See Bryson v. City of Waycross, 888 F.2d 1562 (11th Cir. 1989). Plaintiff must prove the first three elements:

   1) the speech involved a matter of public concern;

   2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and

   3) the speech played a substantial part in the adverse employment action

If Plaintiff meets this burden, the employer must then prove, by a preponderance of the evidence,

   4) "it would have made the same decision even in the absence of the protected speech."

Bryson, 888 F.2d at 1565-66 (internal quotation and citations omitted). The first two elements "are questions of law; the final two steps are questions of fact." Cook v. Geinnett County School Dist., 414 F.3d 1313, 1319 (11th Cir. 2005). Defendants concede Plaintiff was disciplined for publishing the Column in violation of the Fire Department's Standard Operating Procedure 100.08, Media Relations, and for no other reason. See Defs. Concise Statement of Undisputed Material Facts in Support of Defs.' Mot. for Summ. J. at 2-3. Only the first two elements, issues of law, remain for consideration by this Court.

#### 1) The Column Addressed a Matter of Public Concern

The Supreme Court has held that if speech can "be fairly considered as relating to any matter of political, social, or other concern to the community," it qualifies as a matter of public

concern. Connick, 461 U.S. 138, 146 (1983). In making this decision, the Court must consider the "content, form, and context of a given statement, as revealed by the whole record." Id. at 147-48. Public discussion is more likely to be found to qualify for protection, as are statements made as a private citizen, rather than an employee. Perry v. Sinderman, 408 U.S. 593, 598 (1972); Connick, 461 U.S. at 147; Morris v. Crow, 142 F.3d 1379, 1382 (11th Cir. 1998).

Plaintiff claims the Column spoke of matters of public concern because it appeared in the local newspaper to alert the public to concerns about the services provided by the fire department, raising the matter of public safety, and because Plaintiff wrote it "as a representative of the labor organization." Pl. Resp. at 8. Plaintiff asserts that the Column was written purely altruistically, to inform the public that there were "staffing issues at the Department affecting public safety negatively," rather than out of a desire for an increase in his own salary as a firefighter. Id. at 12.

Defendants argue no matter of public concern was implicated because the Column sprang from an "internal employee grievance [rather than a] matter of public concern." Def. Mem. at 8. The analysis on this point requires looking both at the public interest in the speech, and the speaker's private motives. For example, in Anderson v. Burke County, the Eleventh Circuit held that most of a questionnaire, prepared and distributed by an employee of the Emergency Management Agency, who was also the union president, was not protected when the questionnaire asked political candidates about their positions on "grievance procedures, vacation policies, promotion guidelines and pension benefits," when "none of these questions explicitly purport[ed] to advance any citizen interest." 239 F.3d 1216, 1220 (11th Cir. 2001). However, that court held part of the questionnaire "reflect[ed] a matter of public concern" because it "address[ed] concerns about alleged understaffing in the 911 system and of engine companies, physical fitness standards for certain employees, and public tax consequences of high employee

turnovers." Id. In contrast, the Eleventh Circuit held a nurse's speech was not protected when her criticism, of sanitary conditions at the hospital where she worked, was relatively private and in the context of effectively shifting blame for an incident for which the nurse was being disciplined. Pearson v. Macon-Bibb County Hosp. Authority, 952 F.2d 1274, 1276-79 (11th Cir. 1992).

In the closest cases to the facts at hand, the Eleventh Circuit has held similar critical public statements to be protected speech. In Beckwith v. City of Daytona Beach Shores, a fire chief made public statements at a city council meeting in which he "expressed particular concern about a proposal to discontinue the City's paramedic program [because he] considered the paramedic proposal dangerous to the City's citizens, visitors, and his own employees." 58 F.3d 1554, 1556-57, 1565 (11th Cir. 1995). That court held his comments to be protected speech. Id. In Williams v. Roberts, Williams' editorials, published in the county employee association newsletter and made available to the public, criticized a budget which did not include a pay raise for county employees. 904 F.2d 634, 638 (11th Cir. 1990). That court also held the editorials addressed a matter of public concern. Id. While Plaintiff Abad stood to gain personally from the pay raise he advocated in his Column, the issues raised by the Column regarding the quality of service provided by the local firefighter/paramedics were of concern to the general public, as demonstrated, in part, by the Column's contents and the local newspaper's decision to print the Column. Accordingly, this Court holds Plaintiff's speech involved a matter of public concern.

### 2) Plaintiff's Free Speech Interest Outweighs the Employer's Interests

Since this Court has held that the Plaintiff's speech addressed matters of public concern, this Court must next consider whether "the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities." Cook v. Geinnett County School Dist., 414 F.3d 1313, 1319 (11th Cir. 2005). This Court must apply the balancing

test established in Pickering v. Board of Ed., which described the "interest of the State, as an employer, [as] promoting the efficiency of the public services it performs through its employees." 391 U.S. 563, 568 (1968). The three factors to consider are: "(1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made." Morales v. Stierheim, 848 F.2d 1145, 1149 (11th Cir. 1988), cert. denied, 489 U.S. 1013 (1989). Plaintiff argues that the Pickering test need not be applied, since it has not been alleged that the speech created any actual disruption in the fire department. Pl. Mem. at 12-13, citing Washington v. Normandy Fire Prot. Dist., 272 F.3d 522, 626 (8th Cir. 2001); Finn v. N.M., State Pers.Office, 249 F.3d 1241, 1249 (9th Cir. 2001). However, the Eleventh Circuit has held, as acknowledged by Plaintiff, that "a requirement of a showing of actual disruption would be overly burdensome to the public employer." Ross v. Clayton County, 173 F.3d 1305, 13011 (11th Cir. 1999); Pl. Mem. at 13. While a "fear of disruption" may be sufficient, that fear must be reasonable, rather than "purely subjective." McCabe v. Sharrett, 12 F.3d 1558, 1572 (11th Cir. 1994).

Defendants claim their interest in "maintain[ing] public confidence in the ability of the Fire Department's fire and rescue services to carry out its public safety mission," and their "need to secure discipline, mutual respect, trust and particular efficiency among the ranks due to its status as a quasi-military entity different from other employers" are "compelling and legitimate interest[s]." Def. Reply at 6. It is arguable that the Column may have contributed to some reduction in public confidence in the Fire Department, as it was intended to raise concerns about the departments efficiency. Defendants do not specify how the Column reduced the "discipline, . . . respect, trust [or] efficiency among the ranks," or how they feared it would. Id.

In Beckwith v. City of Daytona Beach Shores, in which the Eleventh Circuit held that speech by Beckwith, a fire chief, was protected by the first amendment because the speech was

8

political and aimed at convincing the public to withdraw support for a plan to make cuts to emergency service programs, the court also noted: "[i]t is hard to imagine any combination of government interests sufficient to outweigh [Beckwith's] strong interest in informing the public about policies he believed were dangerous to the City's citizens." 58 F.3d 1554, 1564 (11th Cir. 1995). The Supreme Court has observed that "a stronger showing [of government interests] may be necessary if the employee's speech more substantially involved matters of public concern," Connick, 461 U.S. at 152, and has held that it is "essential that [teachers] be able to speak out freely on such questions without fear of retaliatory dismissal," given teachers' special knowledge of school funding and spending issues, and the public interest in those matters. Pickering, 391 U.S. at 571-72.

Taking the allegations of Plaintiff, as the party opposing summary judgment, as true, the facts before this Court are similar to those in Beckwith. Plaintiff's speech was both public and political, aimed at raising public consciousness of what he characterized as a potential danger to the community. Therefore, this Court balances the interests of Plaintiff and Defendants, and finds more weight in favor of the Plaintiff. Therefore, Defendants' argument that Puto and the City of Marathon are entitled to Summary Judgment because "Plaintiff did not engage in constitutionally protected speech and any interest that he may have had is outweighed by the . . . need to maintain morale, discipline, trust and respect in its paramilitary department" fails.

### B) Defendant Puto is Entitled to Qualified Immunity Because Plaintiff's Right was not "Clearly Established."

Qualified immunity is broadly applied, protecting "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Otherwise, "government officials exercising their official discretion in the discharge of their duties [would] live in constant fear of lawsuit, with the concomitant costs to public servant and society."

Cooper v. Smith, 89 F.3d 761, 764 (11th Cir. 1996). Defendant Puto claims that he is entitled to qualified immunity as a "government official[] performing discretionary functions" and did not "violate a 'clearly established statutory or constitutional right of which a reasonable person would have known.'" Def. Mem. at 4 quoting Storck v. City of Coral Springs, 354 F.3d 1307, 1313 (11th Cir. 2003). Plaintiff does not deny that Puto was acting within his authority and duties as the City Manager in disciplining Plaintiff for violating department policies. As this Court has held, above, that Plaintiff's speech was protected under the Pickering test, Plaintiff need only show Puto violated his "clearly established rights under federal law." Cooper, 89 F.3d at 764.

The Eleventh Circuit has held that "[b]ecause no bright-line standard puts the reasonable public employer on notice of a constitutional violation, the employer is entitled to immunity except in the extraordinary case where Pickering balancing would lead to the inevitable conclusion" that the disciplinary action was unlawful. Dartland v. Metropolitan Dade County, 866 F.2d 1321, 1323 (11th Cir. 1989); accord Hansen v. Soldenwagner, 19 F.3d 573, 576 (11th Cir. 1994). Therefore, this Court must decide if it was clearly established that it would be inevitable for a court to hold Plaintiff's Column to be protected speech. Several courts have based findings of qualified immunity on the existence of elements of personal concern in the speech at issue. See Dartland, 866 F.2d at 1324; Hansen, 19 F.3d at 577. While speech on a matter of public concern is protected, speech on matters which are only of interest to the speaker are not. Connick, 461 U.S. at 146-47.

The Column advocated a raise from which the Plaintiff would personally benefit. Plaintiff also attempted to evoke sympathy for the firefighter/paramedics, of which he was one, and argued for more personnel, which would improve his personal working conditions. Plaintiff's speech, while protected for the reasons discussed above, contained elements of personal interest. These elements lead this Court to hold the results of the Pickering balancing

10

were not "inevitable" and qualified immunity should be granted. See Dartland, 866 F.2d at 1323; Hansen, 19 F.3d at 576.

### C) Summary Judgment is Not Appropriate as to Counts III and IV, as Money Damages are not the Sole Requested Remedy

Defendants move for Summary Judgment on Counts III and IV, arguing that the claims "fail to state a cause of action because an action for money damages is not available for violations of the Florida Constitution." Def. Mem. at 17. Plaintiff's Complaint does not solely request money damages. Plaintiff's Prayer for Relief includes declaratory judgment, a permanent injunction, and the expunging of records, in addition to various money damages, attorneys' fees and "other legal and equitable relief as may be just and proper." Compl. at 11-12. Accordingly, this Court will not grant summary judgment for Plaintiff's Claims III and IV.

## IV.   Conclusion

Based on the foregoing, it is ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (DE # 17) is GRANTED IN PART. Count II is DISMISSED as to Defendant Puto, because he is entitled to qualified immunity, but NOT as to Defendant, City of Marathon. Summary Judgment is DENIED as to Counts III and IV.

DONE AND ORDERED in Chambers at Miami, Florida, this 8th day of February, 2007.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record